UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,

                      Plaintiff,

                                                 Civ. No. 03-5818 (RHK/JSM)
                                               **MEMORANDUM OPINION**
                                               **AND ORDER**

v.


392 Lexington Parkway South, St. Paul,
Minnesota, Ramsey County, with all
buildings, improvements,
fixtures and appurtenances thereto,

                      Defendant,

v.

Long Beach Mortgage Company,

                      Intervenor Defendant,

v.

Mortgage Group III, LLC,

                      Claimant,

v.

Thomas William Gore,

                      Claimant.

---

James S. Alexander, Assistant United States Attorney, Minneapolis, MN, for the Government.

Christopher R. Grote, Lindquist & Vennum, Minneapolis, MN, for Long Beach Mortgage Company.

Mark C. Hart, Courey, Kosanda & Zimmer, P.A., Golden Valley, MN, for Mortgage Group III, LLC.

## INTRODUCTION

Plaintiff United States of America (the "Government") seeks the civil forfeiture of Defendant real property located at 392 Lexington Parkway South, St. Paul (the "property"). Two mortgage companies have challenged the forfeiture and asserted claims to the property based on mortgage agreements they entered into with Brian Gore (then the owner of the property). Each party has moved for summary judgment; the Government claims that the mortgage companies cannot establish that they are innocent owners of the property, and each of the mortgage companies claims that its interest in the property is superior to the interests of the other. The Government has also moved for default judgment and for a final order of forfeiture. For the reasons that follow, the Court determines that the mortgage companies are not innocent owners of a portion of the property, and that portion of the property is subject to forfeiture.

## BACKGROUND

On October 22, 2003, Brian Gore, then the titled owner of the property, pled guilty in this Court to possession with intent to distribute in excess of 500 grams of cocaine. This civil forfeiture action followed on the ground that the subject property was "used to facilitate the drug trafficking activities of Brian Gore." (Government's Mem. in Supp. at 1.) Gore had obtained two mortgage loans secured by the property prior to October 2003, both of which give rise to competing claims to the property now. Because the time-line of

events is critical in determining whose interests in the property are valid and to what extent, the undisputed facts as alleged are set forth in greater detail below.

On October 24, 2002, Gore recorded a contract for deed with the Ramsey County Recorder and Ramsey County Registrar of Titles by which he purchased the property from his father for $100,000. The property is part Torrens and part abstract property.[1]

On November 13, 2002, Gore obtained a mortgage in the amount of $180,000 from Intervenor/Claimant Long Beach Mortgage Corporation ("Long Beach"). The Long Beach mortgage was not recorded or registered at that time.

On August 14, 2003, after two garbage searches at the property and numerous complaints from neighbors, St. Paul police officers executed a search warrant at the property during which they found illegal drugs. On September 3, 2003, Gore was indicted on drug charges stemming from an investigation and search of the property.

On September 22, 2003, Gore obtained another mortgage on the property from Claimant Mortgage Group III, LLC ("MGIII")[2], in the amount of $24,711. The MGIII mortgage was not recorded or registered at that time. Prior to issuing the MGIII mortgage to Gore, Sean Mulcahy, the manager of MGIII, visited the property. Mulcahy did not notice

---

[1] The property consists of the North 50 feet of Lots 12, 13, 14, and 15, Block 19, Ridgewood Park Addition, Ramsey County, Minnesota (Torrens Certificate No. 521412); and Lot 16, Block 19, Ridgewood Park Addition to the City of St. Paul, Ramsey County, Minnesota (abstract property). (See Fedo Aff. Ex. A.) The majority of the property is Torrens property—that portion of the property includes both the house and the garage. (See Hr'g Tr. at 5.) The abstract portion of the property consists of "a strip of grass and perhaps some shrubs in the backyard." (Id.)

[2] Long Beach and MGIII will be referred to herein collectively as "Claimants."

anything unusual or see any evidence of drug trafficking during the visit.  (See Mulcahy Dep. Tr. at 79-82.)  Nor did Gore inform Mulcahy of his involvement with illegal drug activity.  (Id. at 89-90.)

On November 3, 2003, the Government filed a Complaint for Forfeiture *In Rem* against the property, and on November 7, 2003, it filed a notice of lis pendens with the Ramsey County Recorder and with the Ramsey County Registrar of Titles against the property.  The notice of lis pendens stated that "the purpose of this action is for the forfeiture of the defendant real property."  (Fedo Aff. Exs. C, D.)  On November 22, 2003, the U.S. Marshal posted the property with a Notice of Complaint of Forfeiture and served the parties who appeared on record to have a potential interest in the property with a summons and copy of the Complaint.[3]  The U.S. Attorney's Office also published notice of the forfeiture action in *Finance and Commerce*, Minneapolis, Minnesota, on November 25, December 2, and December 9, 2003.

On December 5, 2003, the MGIII mortgage was filed with the Ramsey County Recorder and with the Ramsey County Registrar of Titles.  On May 17, 2004, MGIII was served with the Complaint in this action by the U.S. Marshall.

In late 2003, Gore defaulted on his Long Beach mortgage payments and, in December 2003, Long Beach began preparing to foreclose on its mortgage.  In conjunction with that preparation, Long Beach discovered that its mortgage had not been recorded.  In

---

[3]Neither of the Claimants were served at that time.

April 2004, the Long Beach mortgage was filed with the Ramsey County Recorder and with the Ramsey County Registrar of Titles.  On June 9, 2004, Long Beach moved to intervene in this action (Doc. No. 16), and that Motion was granted on July 9, 2004 (Doc. No. 28).  Long Beach asserts that it "did not know of the conduct of Brian Todd Gore giving rise to [the Government's] Complaint for Forfeiture in Rem."  (Long Beach Verified Statement ¶ 6.)

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  The moving party bears the burden of showing that the material facts in the case are undisputed.  See Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.  See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  See Anderson, 477 U.S. at 256; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**ANALYSIS**

The civil forfeiture statute, 21 U.S.C. § 881(a)(7), authorizes the Government to institute forfeiture proceedings against real property that is used to commit and/or to facilitate the commission of a drug felony.[4] Section 881 is subject to the standards set forth in the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983.[5] See U.S. v. Dodge Caravan SE/Sport Van, 387 F.3d 758, 761 (8th Cir. 2004). Under § 983(c), the Government has the initial burden of proving by a preponderance of the evidence that the property is subject to forfeiture. Id. Where the Government's theory of forfeiture is that the property was used to facilitate the commission of a crime, "the Government shall establish that there was a substantial connection between the property and the offense." Id.; 18 U.S.C. § 983(c)(3).

There is no dispute that the Government has met its burden of establishing a substantial connection between the property and Gore's drug felony. (See, e.g., Chung Aff. ¶¶ 2-5; Barber Aff. ¶¶ 2-6; see also Gov't Mem. in Supp. at 11-15 (discussing extensive

---

[4]Section 881(a)(7) provides for the forfeiture of:

[a]ll real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment . . . .

[5]In 2000, Congress enacted CAFRA in part "to make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizures." United States v. One Lincoln Navigator, 328 F.3d 1011, 1012 (8th Cir. 2003) (internal quotation omitted).

evidence linking the property to Gore's drug offenses).)  This shifts the burden to Claimants to refute the Government's case.  Under CAFRA, Claimants may do this by proving that they are innocent owners of the property and, in that case, the property is not subject to forfeiture.  18 U.S.C. § 983(d).  Claimants assert that they are innocent owners of the property under CAFRA, and Long Beach asserts that its interest in the property is superior to MGIII's interest.  The Government responds that Claimants do not satisfy the requirements of the innocent owner exception as to the Torrens portion of the property.[6]  The Court will first consider whether Claimants fall under the innocent owner exception to the forfeiture, and then consider the priority of Claimants' interests as between each other.

**I.      Claimants' Ownership Interests in the Property**

In the context of civil forfeiture actions, the ownership interests of those parties contesting the forfeiture are often considered on two levels.  First, a claimant must have

---

[6]The Government also claims that Claimants' claims should be dismissed in their entirety as untimely under 18 U.S.C. § 983(a)(4)(A), which provides that a claim against seized property "may be filed not later than 30 days after the date of service of the Government's complaint, or, . . . not later than 30 days after the date of final publication of notice of the filing of the complaint."  While the Government's argument is compelling given Claimants' failure to meet the statutory deadlines, as discussed below, Claimants have proven the existence of a meritorious defense to the forfeiture of the abstract portion of the property, which weighs against the Court imposing the requirements of § 983(a)(4)(A) at this point.  See U.S. v. Ford 250 Pickup, 980 F.2d 1242, 1245 (8th Cir. 1992) (noting that "the party attempting the untimely filing [in a civil forfeiture action] must show excusable neglect or a meritorious defense" (citation omitted)).  Under these circumstances, Claimants' failure to meet the filing deadlines imposed by § 983(a)(4) will be excused.

Article III standing, as this "is a threshold question in every federal court case." United States v. One Lincoln Navigator, 328 F.3d 1011, 1013 (8th Cir. 2003). "In a forfeiture case, a claimant's Article III standing turns on whether the claimant has a sufficient ownership interest in the property to create a case or controversy." Id. Eighth Circuit law is clear that, in the context of the Article III standing inquiry, "ownership interests are defined by state law." U.S. v. Premises Known as 7725 Unity Ave. N., 294 F.3d 954, 956 (8th Cir. 2002). Here, there is no dispute that the Claimants have Article III standing to oppose the forfeiture of the property. See also id.

The merits of Claimants' claims, however, turn on the separate question of whether, under CAFRA, each has "an 'innocent owner's interest' in the property that 'shall not be forfeited.'" One Lincoln Navigator, 328 F3d at 1014 (quoting 18 U.S.C. § 983(d)(1)). The interpretation of the innocent owner defense is at the heart of the instant dispute.[7] Thus, the Court will lay out the pertinent provisions of the statute in detail below:

    (d) Innocent owner defense.

> (1) An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence.
>
> (2)(A) With respect to a property interest in existence at the time the illegal conduct giving rise to forfeiture took place, the term "innocent

---

[7] Prior to the enactment of CAFRA, an owner of real property could assert an innocent owner defense under 21 U.S.C. § 881(a)(7) by showing that the act or omission forming the basis of the forfeiture was committed "without the knowledge or consent of that owner."

>owner" means an owner who—
>>(i) did not know of the conduct giving rise to forfeiture;
>
>\*\*\*\*
>
>(3)(A) With respect to <u>a property interest acquired after the conduct giving rise to the forfeiture</u> has taken place, the term "innocent owner" means a person who, at the time that person acquired the interest in the property—
>>(i) was a bona fide purchaser or seller for value . . .; and
>>(ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture.
>
>\*\*\*\*
>
>(6) In this subsection, the term "<u>owner</u>"—
>>(A) means a person with an <u>ownership interest in the specific property sought to be forfeited</u>, including a leasehold, lien, <u>mortgage</u>, recorded security interest, or valid assignment of an ownership interest; and
>>(B) does not include—
>>>(i) a person with only a general unsecured interest in, or claim against, the property or estate of another; . . . or
>>
>>\*\*\*\*
>>>(iii) a nominee who exercises no dominion or control over the property.

18 U.S.C. § 983(d) (2004) (emphasis added).

The dispositive issue to be resolved by the Court is whether Claimants' "property interests" under CAFRA arose before or after the Government recorded its notice of lis pendens. The Government argues that, just as in the Article III context, ownership interests under CAFRA are defined by the law of the state in which the interest arose. Under the Government's theory, Long Beach and MGIII did not acquire their respective ownership interests in the property until <u>after</u> the lis pendens was filed (i.e., when they filed their mortgages with Ramsey County). Under this argument, Claimants would not qualify as

9

innocent owners because they knew or had cause to know that the property was subject to forfeiture at the time they acquired their ownership interests. See 18 U.S.C. § 893(d)(3)(A); Strom v. Palatine Nat'l Bank of Palatine, Illinois, 921 F.2d 836, 840 (8th Cir. 1991) (noting that a "lis pendens gives notice of the lien to any subsequent purchaser and prevents that purchaser from being a bona fide purchaser who can avoid the lien").

The Claimants, however, urge the Court to look no further than the plain language of CAFRA, which provides that an "owner . . . means a person with an ownership interest in the specific property sought to be forfeited, including a . . . mortgage . . . ." 18 U.S.C. § 983(d)(6)(A) (emphasis added). Claimants contend that this provision of the statute establishes their interest in the property without regard to state law. Under this theory, Claimants acquired their respective property interests before the lis pendens was filed (i.e., when the mortgage agreements were executed), and they do qualify as innocent owners because there is no dispute that prior to the lis pendens being filed, neither claimant had any knowledge of Gore's illegal conduct. The Court must first determine how Claimants' ownership interests are to be determined under CAFRA, and then consider whether Claimants' qualify as innocent owners pursuant to the statute.

  a. **The Role of State Law Under CAFRA**

The Eighth Circuit recently considered the innocent owner defense under CAFRA in One Lincoln Navigator, 328 F.3d 1011. The court noted that the relevant inquiry under CAFRA "to resolve . . . innocent owner claims, [is] who has an ownership interest in the [property] within the meaning of 18 U.S.C. § 983(d)(6)(A)." Id. at 1014. In discussing the

likely arguments of the parties, the court referenced state law and noted that "[o]wnership interests are defined by state law."[8] Id. at 1014-15.  Further, the Court stated that "this aspect of the case is akin to a quiet title action to determine the respective ownership interests" of the parties.  Id. at 1015 (citation omitted).  The court also cited a pre-CAFRA case, United States v. Tracts 10 & 11 of Lakeview Heights, 51 F.3d 117, 120-21 (8th Cir. 1995), which relied on state law to define the property interests of parties contesting a forfeiture.  In following these two decisions, the Court determines that state law must be referenced to determine the extent of Claimants' ownership interests under CAFRA.

This determination is bolstered by the analysis the Court must conduct in order to evaluate the merits of Claimants' claims.  The relevant question for purposes of determining who qualifies as an innocent owner is when does an ownership interest arise; CAFRA distinguishes between owners whose property interest was in existence at the time the illegal conduct giving rise to the forfeiture occurred, 18 U.S.C. § 983(d)(2)(A), and owners whose property interest was acquired after the conduct giving rise to the forfeiture occurred, id. at § 983(d)(3)(A).[9]  The non-exhaustive list of ownership interests included in

---

[8]The court noted that a state law determination of property interests was subject to the exception specified in CAFRA that "'a nominee who exercises no dominion or control over the property' may not be an innocent owner."  One Lincoln Navigator, 328 F.3d at 1015 (quoting CAFRA).  CAFRA lists three interests in property, including the above-mentioned, that do not qualify as ownership interests under the statute.  18 U.S.C. § 983(d)(6)(B)(i)-(iii).  These exclusions codify the majority rule in pre-CAFRA case law. Stefan D. Cassella, The Uniform Innocent Owner Defense to Civil Asset Forfeiture, 89 Ky. L.J. 653, 679-80 (2001).

[9]In the instant action, if Claimants' interest arose after the lis pendens was filed, Claimants cannot meet the requirement that they "did not know and [were] reasonably

CAFRA, id. at § 983(d)(6), cannot supplant the role of state law in defining when and under what circumstances ownership interests in real property arise.

That state law must still be referenced in forfeiture proceedings also makes sense given the complex nature of property rights and the lack of any detailed definition of those rights in CAFRA. In the context of the criminal forfeiture statute, the Sixth Circuit stated that

> because forfeiture proceedings implicate property rights which have traditionally been measured in terms of state law, and because [the criminal forfeiture statute] contains no rule for determining the scope of property rights, it is appropriate to refer to state law in determining the nature of the property interest involved in a forfeiture proceeding.

United States v. Harris, 246 F.3d 566, 571 (6th Cir. 2001) (internal quotation omitted). CAFRA is not equipped to define the scope of property interests sufficiently to determine when a given interest in real property arose.[10]

### b.  **The Abstract Portion of the Property**

As mentioned above, the property is part Torrens property and part abstract property. (See Gov't Mem. in Supp. at 2; Fedo Aff. Ex. A.) The distinction between the two types of property is significant because Minnesota law establishes that when an interest in land is created depends on the type of property at issue. See, e.g., Chaney v. Minneapolis Cmty.

---

without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(3)(A)(ii).

[10]As one commentator noted in discussing CAFRA, "state law is used to determine what interest, if any, a claimant has in forfeitable property, while federal law determines whether that interest is sufficient to defeat the Government's interest in the property under the federal forfeiture statute." Cassella, 89 Ky. L.J. at 678.

Dev. Agency, 641 N.W.2d 328, 335 (Minn. Ct. App. 2002) (distinguishing between Torrens and non-Torrens property).  There is no dispute that, under Minnesota law, Long Beach and MGIII each acquired an ownership interest in the abstract portion of the property at the time they closed on their respective mortgages.  (Gov't Reply Mem. at 8.)  See Chaney, 641 N.W.2d at 335; see also Fingerhut Corp. v. Suburban Nat'l Bank, 460 N.W.2d 63, 65 (Minn. Ct. App. 1990).   Thus, the Court must apply CAFRA to determine whether Claimants are innocent owners under the statute.

Long Beach closed on its mortgage on November 13, 2002, and there is no allegation that Brain Gore was engaged in the illegal conduct giving rise to the forfeiture at that time.  Under CAFRA, because its property interest was in existence at the time of the illegal conduct, Long Beach must prove that it "did not know of the conduct giving rise to" the forfeiture.  18 U.S.C. § 983(d)(2)(A)(i).  Long Beach has met its burden—there is no dispute that it did not know of Gore's illegal conduct when the parties closed on the mortgage.  (See Long Beach Verified Statement ¶ 6; Long Beach Ex. O ¶ 8.)

MGIII closed on its mortgage on September 22, 2003.  At that time, Gore had been indicted for the illegal conduct giving rise to this forfeiture proceeding.  Because MGIII obtained its property interest after the illegal conduct, it must prove that at the time it acquired its interest in the property it was a "bona fide purchaser or seller for value" and "did not know and was reasonably without cause to believe that the property was subject to forfeiture."  18 U.S.C. § 983(d)(3)(a)(i)-(ii).  There is no dispute that MGIII was a bona

fide purchaser for value.[11]  Furthermore, MGIII has presented sufficient undisputed evidence to meet its burden of proving that it did not know or have reason to believe that Gore had engaged in illegal conduct.  (See, e.g., Mulcahy Dep. Tr. at 43-44, 79-82 (explaining that Mulcahy, on behalf of MGIII, inspected the property and did not see any evidence of illegal drug activity); id. at 89-90 (Mulcahy testified that he was not aware of Gore's involvement with illegal drug activity).)  Accordingly, each Claimant has successfully established that it is entitled to the protection of CAFRA's innocent owner defense with respect to the abstract portion of the property, and its interest in that portion of the property is not subject to forfeiture.

    **c.**    **The Torrens Portion of the Property**

Under Minnesota law, when Torrens property is at issue, the act of registration is the operative act that creates an interest in the land.  Thus, "[t]he necessity of registration to create an interest in the land is what distinguishes registered, or Torrens, property from abstract property."  Fingerhut Corp., 460 N.W.2d at 65 (emphasis in original).  As the Eighth Circuit stated in a recent forfeiture case with facts similar to those at issue here, "[b]ecause only the act of registration creates an interest in land, [the claimant] had no legal interest in the property before it registered its mortgage."  7725 Unity Ave. N., 294 F.3d at

---

[11]On September 22, 2003, MGIII tendered Gore $22,500 in exchange for a mortgage interest on the property.  See Anderson v. Graham Inv. Co., 263 N.W.2d 382, 384 (Minn. 1978) (defining bona fide purchaser as "one who gives consideration in good faith without actual, implied, or constructive notice of inconsistent outstanding rights of others" (citation omitted)).  (See also Hr'g Tr. at 8 ("The government does not contend that [Claimants] are not bona fide purchasers.").)

14

957 (decided under the pre-CAFRA statute). Because the Government filed the lis pendens before either claimant registered its mortgage, Minnesota law is clear that Long Beach and MGIII's interests in the Torrens portion of the property are junior to the Government's interest. Id. Having determined that Claimants' ownership interests in the Torrens portion of the property did not arise until each registered its mortgage, the Court must again apply CAFRA to determine whether Claimants are innocent owners under the statute.

The Government filed its notice of lis pendens on November 7, 2003. The notice of lis pendens stated that "[t]he purpose of this action is for the forfeiture of the defendant real property." (Fedo Aff. Exs. C, D.) Both Claimants registered their mortgages after the notice of lis pendens was filed; MGIII registered its mortgage on December 5, 2003, and Long Beach registered its mortgage on April 2, 2004. Because Claimants' interests in the Torrens portion of the property arose after "the conduct giving rise to the forfeiture" took place, each must prove that at the time it acquired an interest in the property it "(i) was a bona fide purchaser or seller for value" and that it "(ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3)(a)(i)-(ii).

Each Claimant has failed to meet the second prong of the innocent owner defense—that it did not know and was reasonably without cause to believe that the property was subject to forfeiture. The Government's notice of lis pendens provided notice to Claimants as a matter of law that the property was subject to forfeiture. Under Minnesota law, a properly recorded notice of lis pendens gives constructive notice from the date it is

15

filed. See Minn. Stat. § 508.48 (every instrument which would affect title to unregistered land if recorded with county recorder, shall affect registered land when registered with the county registrar of titles, "and shall be notice to all persons from the time of such registering or filing of the interests therein created"); Fingerhut Corp., 460 N.W.2d at 68 (noting that mortgagee had "constructive notice of the litigation from the date the notice of lis pendens was recorded"). Accordingly, because Claimants' ownership interest in the Torrens portion of the property arose after the Government filed its notice of lis pendens, they are not innocent owners under CAFRA as to that portion of the property.

## II.   The Priority of Long Beach and MGIII's Mortgages

Long Beach has also moved for summary judgment against MGIII, claiming that its mortgage is "prior and superior" to the MGIII mortgage. While Long Beach closed on its mortgage over a year before MGIII secured its mortgage, MGIII filed and registered its mortgage before Long Beach did the same with its mortgage. Under the recording statutes, Minn. Stat. §§ 507.34 and 508.25, the MGIII mortgage would have priority over the Long Beach mortgage because it was filed and registered first. However, Long Beach claims that MGIII had actual notice of the Long Beach mortgage before MGIII closed on its mortgage; actual notice would negate any benefit MGIII would have derived from recording its mortgage first, and Long Beach would have the priority mortgage. See Chergosky v. Crosstown Bell, Inc., 463 N.W.2d 522, 524 (Minn. 1990); Alchemedes/Brookwood, Ltd. P'ship, 546 N.W.2d 41, 42 (Minn. Ct. App. 1996).

In support of its contention that MGIII had actual notice of the Long Beach

mortgage, Long Beach cites to Gore's testimony that he notified Sean Mulcahy, the manager of MGIII, of the Long Beach mortgage prior to MGIII granting its mortgage to him. (Gore Dep. at 85-86.) Gore also stated that he likely provided MGIII with a copy of the Long Beach mortgage prior to closing on the MGIII mortgage. (Id.) However, Mulcahy testified that he did not recall Gore ever informing him of the Long Beach mortgage (Mulcahy Dep. Tr. at 34), and he maintains that, at the time of the MGIII mortgage, he "had no knowledge of the existence of any mortgage given by . . . Gore to Long Beach" (Mulcahy Aff. ¶ 2). Because of this conflicting testimony, the Court determines that genuine issues of material fact preclude summary judgment on the issue of whether MGIII had actual knowledge of the Long Beach mortgage at the time the MGIII mortgage was executed.

## CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein **IT IS ORDERED** that:

(1) Claimant Mortgage Group III, L.L.C.'s Motion for Summary Judgment (Doc. No. 59) is **GRANTED IN PART**, as follows—the Motion is GRANTED with respect to the abstract portion of the property, and DENIED with respect to the Torrens portion of the property;

(2) Intervenor/Claimant Long Beach Mortgage Company's Motion for Summary Judgment (Doc. No. 64) is **GRANTED IN PART**, as follows—

(a) the Motion is GRANTED with respect to the abstract portion of the

17

property, and DENIED with respect to the Torrens portion of the property; and

    (b)    the Motion is DENIED as to Mortgage Group III; and

(3)    Plaintiff United States of America's Motion for Default Judgment, for Summary Judgment, and for an Order of Forfeiture (Doc. No. 76), is **GRANTED IN PART AND DENIED IN PART**, as follows—

    (a)    the Motion for Default Judgment against all persons and entities who have not filed a verified claim for the property and an answer to the Complaint for Forfeiture is GRANTED;

    (b)    the Motion for Summary Judgment against Mortgage Group III and Long Beach is GRANTED with respect to the Torrens portion of the property, and DENIED with respect to the abstract portion of the property; and

    (c)    the Motion for an Order of Forfeiture is GRANTED with respect to the Torrens portion of the property, and DENIED with respect to the abstract portion of the property.

Dated: September  7 , 2005                       s/Richard H. Kyle
                                                                        RICHARD H. KYLE
                                                                        United States District Judge